FILED'08 MAR 04 14:01USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULEE Y. SCRUGGS,                                                    Civil No.  06-6058-CL

      Plaintiff,                                                              ORDER

   v.

JOSEPHINE COUNTY SHERIFF'S
DEPARTMENT; JOSEPHINE COUNTY;
DAVID H. DANIEL; and JEFF MICHAEL,

      Defendants.


CLARKE, Magistrate Judge:

      Plaintiff brings this action against defendants alleging 42 U.S.C. § 1983 claims for

violation of the First Amendment and Fourteenth Amendment, retaliation claims under

Title VII, 42 U.S.C. § 2000e, and ORS 659A.030, and an ORS 659A.203 whistleblowing

claim.  Plaintiff seeks economic damages, declaratory and injunctive relief, non-economic

damages, punitive damages, and attorney's fees and costs.  This Court has jurisdiction

pursuant to 28 U.S.C. §§ 1331 and 1367.  The parties have executed written consents to

entry of judgment by a magistrate judge (#63).    28 U.S.C. § 636 (c).  Before the court

are plaintiff's motion for summary judgment (#39) and defendants' motion for partial

summary judgment (#45).  For the reasons stated, the Court denies plaintiff's motion for

summary judgment, and grants in part and denies in part defendants' motion for partial

summary judgment.

## I. FACTS

Construing the facts in the light most favorable to the non-movant, the record

reveals the following[1]:

Plaintiff Julee Scruggs commenced employment with defendants in October 1998.

She was assigned to the jail in April 1999. She then went to patrol in 2000, but she

continued to work in the jail until 2001. (Scruggs Dep. p 16, line 13; p 17, line 12; p 20,

lines 4-5; Defs. Ex. 1, p.2.) There were 20 male deputies on patrol and two to four

females. (Harman Dep. 47, lines 12-22). Plaintiff did a good job. She was reliable and

honest. (Harman Dep. p 16, line 6-20). Sgt. Michael rated her as "excellent," "I told Julee

on many occasions that I appreciated the job she did on the shift." (Michael Dep. p 83,

lines 10-22).

In 1998 or 1999, Deputy Mike Matiaco started making inappropriate advances

toward Plaintiff. (Defs. Ex. 1, p. 7.)

In October 2001, plaintiff complained about sexual harassment towards herself,

other female employees and female inmates by Sgt. Michael Matiaco. (Scruggs Dep. p

38, lines 5-12; p 38, line 24 to p 39, line 13; p 41, line 23 to p 42, line 6; p 43, line 9 to p

44, line 19; p 79, lines 15-23; p 143, lines 11-13; Granat Dep. p 25, lines 2-15; Defs. Ex.

---

[1] Only those facts necessary to rule on the parties' motions for summary judgment have been included. Because certain portions of plaintiff's declaration were not included in the facts, defendants' motion to strike portions of Scruggs' Declaration is denied as moot. References in the facts to certain deposition testimony without reference to an exhibit number are references to plaintiff's evidence submitted in support of her motion for summary judgment.

1 pp. 8-12.)  She filed the complaint after being ordered to do so by a superior.  (Def. Ex. 1, pp 8-12.)

Kent Granat, defendants' HR Director, investigated. (Scruggs Dep. p 45, line 17; Granat Dep. p 19, lines 16-23; p 21, line 19 to p 26, line 16).  An investigation report was issued on November 26, 2001. Plaintiff did not agree with the investigation because, while two allegations against Matiaco were sustained, many were not. (Defs. Ex. 1, pp. 8-12; Scruggs Dep. p 45, lines 1-2; Granat Dep. p 25, line 20; Pl. Ex. 21).).

Plaintiff maintains that one of her performance reviews was altered in October of 2001. (Defs. Ex. 1, p. 23).

Plaintiff complained about the Matiaco investigation in March of 2002. The County reopened the investigation. Matiaco was demoted on April 25, 2002. (Defs. Ex. 1, pp. 13-15;  Scruggs Dep. p 46, lines 6-20; p 69, lines 9-10; Pl. Ex. 22; Granat Dep. p 27, line 3).

On April 12, 2002, Plaintiff spoke with Defendant Daniel about harassment by Matiaco.  Plaintiff told him Mr. Granat was not an impartial investigator, and she would go to the press if an adequate investigation was not conducted. (Scruggs Decl. ¶¶ 13-15)

On April 25, 2002, Mr. Granat recommended that Matiaco be demoted with loss of seniority. Additional charges were sustained including allegations that he created a hostile work environment for female employees; engaged in behavior perceived by female and male employees as threatening and intimidating; and questioning individuals who were witnesses in this investigation after being advised by supervisors not to do so. There was no recommendation for termination. (Pl. Ex. 26).

On April 25, 2002, the same day Mr. Granat recommended that Matiaco be demoted, he also recommended that Plaintiff be given a "Letter of Instruction" for the alleged use of sexual language and innuendo in the workplace. (Pl. Ex. 27).

On May 7, 2002, plaintiff wrote to her supervisor that threats had been made against her and others by Matiaco. She stated that, because of Matiaco's conduct, some deputies in the jail had requested not to work with him and that she feared for her safety. She stated "This is a violation against the Whistle Blowers Act. I feel that I am still being subjected to a hostile work environment because of these threats." (Pl. Ex. 60.)

On June 14, 2002, complaints were made against Plaintiff for an alleged sexual comment by Sherry Williams, administrative secretary at the jail who was the wife of the jail commander, a friend of Matiaco. Plaintiff had allegedly covered her ears in the presence of Ms. Williams when comments—which plaintiff took to be sexual—were made by male deputies. No investigation was conducted. (10-9-07 Bloom Decl. Ex. 2.)

During the summer of 2002, plaintiff met Chris Buckley online and began a romantic relationship with him. (Pl. Ex. 9; Ex. 1, p. 3). Buckley informed Plaintiff that he had a criminal history. (Defs. Ex. 1, pp. 45). Buckley was a convicted felon. (Defs. Ex. 4, p. 1). Plaintiff took Buckley on a ride-along in her patrol car, which put her firearms within his reach. (Defs. Ex. 5, p. 1, Ex. 1, p. 6). On or about August 30, 2002, defendants learned that Plaintiff was associating with Mr. Buckley. (Pl. Ex. 9.) In September 2002, defendant Daniel changed personnel policy making any association between Plaintiff and Mr. Buckley a disciplinary offense. (Harman Dep. p 28, line 10 to p 30, line 20; Pl. Ex. 7). Plaintiff then notified defendants she was engaged to Mr. Buckley. (Pl. Ex. 11).

Plaintiff received a Letter of Instruction dated October 24, 2002, charging her with associating with a convicted felon. (Defs. Ex. 4; Pl. Exs. 9, 15, 17, 18, 20). Plaintiff received a Letter of Reprimand on November 8, 2002. (Defs. Ex. 5). Plaintiff was disciplined by means of a six-month pay reduction on December 16, 2002. (Defs. Ex. 6). Plaintiff filed a grievance and the six-month reduction was reduced to three months. It was also agreed that the charge would be removed from her personnel file. (Pl. Exs. 9, 15, 17, 18, 20; Defs. Ex. 1, pp. 28-30).

Plaintiff used LEDS, a law enforcement computer system, to find out information on Buckley. (Defs. Ex. 2, p. 2). Use of this computer program for personal use was not permitted. (Defs. Ex. 2, p. 3). Plaintiff received a Letter of Reprimand for her use of LEDS on December 26, 2002. (Defs. Ex. 7; Pl. Exs. 2, 19; Scruggs Decl. ¶ 17.)

On September 11, 2002, plaintiff notified her supervisor, Lt. Harman, that the complaints from Ms. Williams were being voiced because plaintiff had caused charges to be brought against Matiaco. (Pl. Exs. 3, 4, 19; Scruggs Decl. ¶ 17).

Plaintiff claims that she received a Letter of Instruction in 2002 for allegedly harassing Sharon Williams, a co-worker. (Defs. Ex. 1, p. 24). Plaintiff claims that she was "bad-mouth[ed]" by Ms. Williams in previous years. (Defs. Ex. 1, pp. 41-42).

During an investigation of a complaint against Matiaco by Corporal Christa Damron, Plaintiff learned that Matiaco had made statements about her which showed he was trying to harm her, and on June 10, 2003, plaintiff filed a claim against Matiaco. (Granat Dep. pp. 44-45; Pl. Exs. 31, 32). On July 17, 2003, defendant found that plaintiff's complaint was not sustainable. (Pl. Ex. 34).

Commencing January 31, 2004, the local press published a series of articles critical of the sheriff's department discussing the Damron and Scruggs complaints against Matiaco including plaintiff's earlier statement that she would go public unless her complaint against Matiaco were reinvestigated. The articles included rebuttals by defendant Daniel suggesting people were out to get Matiaco and that there were employees who needed to get another job if they did not like it.   (Pl. Ex. 59.)

Plaintiff feels that she was shunned by co-workers, but didn't know of or seen any directive to shun her but she had heard of one. (Defs. Ex. 1, pp. 17, 43). She said that others did not want to work with her because she had reported Matiaco's sexual harassment. (Defs. Ex. 1, p. 16).

Plaintiff stated that she and another officer were referred to as "pussy patrol" in 2001. (Defs. Ex. 1, p. 22).  Plaintiff has asserted that, from 2001 onward, she had difficulty obtaining new uniforms when she ripped her uniform. Plaintiff asserts that she would instead have to get old pants out of reserve or out of a locker. (Defs. Ex. 1, pp. 20-21).  Plaintiff also described one incident where Defendant Michael did not believe a woman who claimed to have been kidnapped. (Defs. Ex. 1, p. 33).

In 2004 or possibly 2005, Plaintiff was selected with three other deputies to attend a prestigious homicide investigation course in Las Vegas. Plaintiff stated that Harman told her that he "took a lot of shit" for picking her. Harman clarified that the comments were substantively the "why her and not me type of thing." (Defs. Ex. 1, p. 26, Ex. 2, p. 6).

During 2004, Plaintiff obtained information about the activities of certain

motorcycle enthusiasts regarded by defendants as outlaw motorcycle gang members which she passed on to law enforcement personnel. (Pl. Ex. 11; Scruggs Decl. ¶ 10.)

The Vagos, an outlaw motorcycle gang, are listed by the California Department of Justice as the number one criminal organization in the state. (Defs. Ex. 2, pp. 4-5). Plaintiff allegedly talked with a biker who had confidential information that plaintiff had given to the Sheriff's Office which the biker allegedly obtained from some source besides Plaintiff. (Defs. Ex. 1, p. 35.)

Plaintiff claims that she was subjected to an "false performance evaluation" in 2005.[2] (Defs. Ex. 1, p. 44).

On March 1, 2005, Sheriff Winters from Jackson County told defendant Michael a confidential source said there was an undercover female in Michael's area leaking information to and possibly dating the president or vice-president of the VAGOS. (Michael Dep. p 43, line 21 to p 45, line 15; Pl. Ex. 49).

On May 18, 2005, a notice was published by Lt. Harman regarding a motorcyle event at Schroeder Park in June 2005 dealing with the staffing of the event. It discussed the involvement of outside agencies including the Oregon State Police. Plaintiff was assigned by Lt. Harman to be at the park. (Pl. Ex. 50) At least 30 people in the sheriff's office could have known about the notice. (Michael Dep. p 56, lines 2-10).

Freeburg, a VAGOS member, had a conversation with Sheriff's deputy Shaw in which the upcoming biker event was discussed. Shaw understood Freeburg to have said

---

[2] The parties agree that plaintiff had not had a formal performance evaluation since 2004. In plaintiff's brief, she states that defendant Michael wrote an inaccurate assessment. When discussed, the Court will refer to this event as the "2005 inaccurate evaluation/assessment."

Plaintiff had told him outside agencies would be at the event. (Michael Dep. p 23, lines 15-24). Shaw later wrote a memo.  Deputy Geiger had overheard part of the Shaw-Freeburg conversation. He later wrote a memo. (Michael Dep. p 24, line 24 to p 25, line 6; Pl. Ex. 43; 9-26-07 Bloom Decl. Ex. 8).

On June 3, 2005, the Daily Courier discussed the event and reported defendant Daniel as saying 100 VAGOS members were expected; there had been a history of trouble in the past; the club claimed to have turned a new leaf but he was not holding his breath; and his department was putting on extra people and coordinating with city and state police. (Pl. Ex. 57).

The undersheriff assigned defendant Michael on or about June 1, 2005, to investigate allegations that plaintiff had leaked confidential information to an outlaw motorcycle gang.  He compiled a report with his findings, and recommended Plaintiff's termination. ((Michael Dep. p 24, lines 11-21; Pl. Ex. 51; Defs. Ex. 12).

On June 17, 2005, plaintiff was placed on administrative leave.  Plaintiff was confined to her residence for three months.  (Pl. Ex. 44).

Plaintiff claims that Defendant Michael made statements to dispatcher Lily Morgan that women should not be on patrol when backup was 20 minutes away. (Defs. Ex. 1, pp. 31-32). In an investigative interview in November 2005, dispatcher Lily Morgan reported that she made a comment that female deputies were becoming extinct and defendant Michael responded that it might be sexist to say, but because backup is often 20 minutes away, females should reconsider. Plaintiff was then the only female patrol deputy. (Pl. Ex. 39).

Order - Page 8

Plaintiff denied telling Freeburg other agencies would be at the event. (Michael Dep. p 51, line 5). Freeburg also denied such a leak. (Michael Dep. p 51, line 21). Geiger did not hear those words. (Pl. Ex. 43). Michael could not find out who the leaker was and did not pursue it further. (Michael Dep. p 52, lines 14-15).

The investigation concluded that Plaintiff was guilty of leaking confidential information; untruthfulness and insubordination; conduct unbecoming; and leaking confidential information. She was terminated. (Pl. Ex. 51).

Plaintiff claims that she was terminated for being female. (Defs. Ex. 1, p. 27.)

Defendants prepared  a form F-4 Personnel Action Report indicating plaintiff was terminated. (Defs. Ex. 13).  In a request regarding Julee Scruggs, the Department of Public Safety Standards and Training (DPSST) requested "the investigation that led to [Scruggs'] discharge."  (Defs. Ex. 14).

The Department of Public Safety Standards and Training has issued a "Contested Case Notice of Intent to Revoke, Opportunity to be Heard, and Final Order Revoking Certifications if No Request for Hearing Is Received." (Defs. Ex. 15). Plaintiff requested a hearing. (Defs. Ex. 16). That hearing has not yet occurred. (9-26-07 Bloom Decl., p. 3).

Matiaco was still employed by defendants as of March 2007.  (Pl. Ex. 61; Granat Dep. p 55, line 1 to p 56, line 17).

## II. **LEGAL STANDARDS**

A moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ."

Fed. R. Civ. P. 56(c); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir.

2002).  The court cannot weigh the evidence or determine the truth but may only

determine whether there is a genuine issue of fact.  Playboy Enters., Inc. v. Welles, 279

F.3d 796, 800 (9th Cir. 2002).

        The moving party must carry the initial burden of proof.  Celotex Corp. v. Catrett,

477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the

court portions of the record on file which demonstrate the absence of any genuine issue of

material fact.  Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In

assessing whether a party has met its burden, the court views the evidence in the light

most favorable to the non-moving party.  Allen v. City of Los Angeles, 66 F.3d 1052,

1056 (9th Cir. 1995).  All reasonable inferences are drawn in favor of the non-movant.

Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

        If the moving party meets its burden with a properly supported motion, the burden

then shifts to the opposing party to present specific facts which show there is a genuine

issue for trial.  Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th

Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986).  If the

moving party presents evidence which, taken by itself, would establish the right to a

directed verdict at trial, the motion for summary judgment must be granted, in the

absence of any significant probative evidence tending to support the opposing party's

theory of the case.  THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94

(9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968).

Conclusory allegations, unsupported by factual material, are insufficient to defeat a

motion for summary judgment.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56,

designate specific facts which show there is a genuine issue for trial.  <u>Devereaux</u>, 263

F.3d at 1076.

### III.  <u>DISCUSSION</u>

Plaintiff seeks summary judgment as to all claims alleged by her and defendants

move for  summary judgment as to some issues as to all claims.

<u>Proper defendants</u>

As an initial matter, plaintiff agrees with defendants' argument that defendant

Josephine County Sheriff's Department is not a proper defendant.  Defendants' motion on

the ground that defendant Josephine County Sheriff's Department is not the real party in

interest is granted.

Defendants also contend that defendant Daniel is not the real party in interest

because all allegations of defendant Daniels' actions relevant to plaintiff's claims are acts

in his official capacity, and suing a county sheriff in his official capacity is the same as

suing the county.

The  Supreme Court has rejected the argument that officials may not be held liable

in their personal capacity for actions they take in their official capacity.  In <u>Kentucky v.

Graham</u>, 473 U.S. 159, 166 (1985), the Supreme Court found that, "[T]o establish

personal liability in a § 1983 action, it is enough to show that the official, acting under

color of state law, caused the deprivation of a federal right."  <u>See</u> <u>Conn v. Gabbert</u>, 526

U.S. 286, 290 (1999) ("Section 1983 provides a federal cause of action against any person

who, acting under color of state law, deprives another of his federal rights.").  The

Graham Court distinguished an official capacity action, stating:

> More is required in an official-capacity action, however, for a
> governmental entity is liable under § 1983 only when the entity itself is a
> "'moving force'" behind the deprivation; thus, in an official-capacity suit
> the entity's "policy or custom" must have played a part in the violation of
> federal law.

473 U.S. at 166; Huskey v. City of San Jose, 204 F.3d 893, 904 (9th Cir. 2000).  In Hafer

v. Melo, 502 U.S. 21, 27-28 (1991), the Court stated that the § 1983 requirement of

action under color of state law means that an official may be liable because of the official

authority possessed.  The Court stated that a distinction between acts taken under color of

state law, such as acts taken outside the official's authority or not essential to operation of

the government, and acts within the official's authority and necessary to performance of

governmental functions, has no support in the broad language of section 1983.  The Court

also noted that any distinction in actions taken under color of law cannot be reconciled

with decisions regarding the immunity of government officers "otherwise personally

liable for acts done in the course of their official duties," because it would absolutely

immunize officials from personal liability for actions taken within the official's authority

and necessary to fulfilling governmental functions.[3]  Id.  The Ninth Circuit, in addressing

an argument similar to defendants that a suit must be against the individuals in their

_____

[3]  Defendants raise the affirmative defense of qualified immunity in their answer, which is a
defense available only to officials who are sued in their individual capacity.  Ngiraingas v.
Sanchez, 858 F.2d 1368, 1373 (9th Cir. 1988), aff'd, 495 U.S. 182 (1990); Huskey, 204 F.3d at
902, 904.  They argue on summary judgment that defendant Daniel is entitled to qualified
immunity.

official capacities since the complaint allegations concerned the individuals' conduct

while performing official duties, stated:

> This argument confuses the capacity in which a defendant is sued with the
> capacity in which the defendant was acting when the alleged deprivation
> of rights occurred.  The former need not coincide with the latter.  Clearly,
> under § 1983, a plaintiff may sue a state officer in his individual capacity
> for alleged wrongs committed by the officer in his official capacity.

Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991); Vance v. County of Santa Clara, 928 F.

Supp. 993, 996 (N.D. Cal. 1996) ("in a personal-capacity suit, the plaintiff is trying to

place liability directly on the state officer for actions taken under color of state law").  In

the Ninth Circuit, § 1983 damages actions are generally viewed as suits against the

individual defendants.  Blaylock v. Schwinden, 862 F.2d 1352, 1354 (9th Cir. 1988);

Price, 928 F.2d at 828.

Accordingly, defendants' motion for summary judgment on the ground that

defendant Daniel should be dismissed because this is a suit against him only in his

official capacity is denied.


First Claim - 42 U.S.C. § 1983 First Amendment

Plaintiff claims that defendants retaliated against her for exercising her First

Amendment rights of speech and association relating to her opposition to sexual

harassment.

The Ninth Circuit has found that,

> In order to state a claim against a government employer for
> violation of the First Amendment, an employee must show (1) that he or
> she engaged in protected speech; (2) that the employer took "adverse

employment action"; and (3) that his or her speech was a "substantial or motivating" factor for the adverse employment action.

Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (and cases cited); Marable

v. Nitchman, 511 F.3d 924, 929 (9th Cir. 2007).

Defendants do not dispute that plaintiff was engaged in protected speech--that is, plaintiff's speech was as a citizen and was a matter of public concern.  Pickering v. Board of Education, 391 U.S. 563 (1968); Coszalter, 320 F.3d at 973.

Defendants do not dispute that adverse employment actions occurred.  However, defendants contend that any claim based on the adverse employment actions of reprimand and reduction in pay alleged by plaintiff are barred by the statute of limitations with the exception of the allegedly inaccurate evaluation/assessment in early 2005.  In Oregon, the state's "two-year statute of limitations for personal injury actions [,ORS 12.110(1),] applies to actions under 42 U.S.C. § 1983."  Cooper v. City of Ashland, 871 F.2d 104, 105 (9th Cir.1989) (per curiam);  Keller v. City of Portland, No. CV-98-263-ST, 1998 WL 1060222, at *5 (D. Or. Nov. 13, 1998).

The Supreme Court in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 111-15 (2002), overruled previous Ninth Circuit authority which applied the continuing violation doctrine to discrete acts of discrimination and retaliation.  Lyons v. England, 307 F.3d 1092, 1105-06 (9th Cir. 2002); see Kitchen v. WSCO Petroleum Corp., 481 F. Supp.2d 1136, 1142 (D. Or. 2007).  The Morgan Court, citing the language of 42 U.S.C. § 2000e-5(e)(1),  determined that, "A discrete retaliatory or discriminatory act 'occurred' on the date that it 'happened'" and, therefore, a party must file a charge within

180 or 300 days of the date the act occurred or lose the ability to recover for it.  The Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Morgan, 536 U.S. at 113; Lyons, 307 F.3d at 1105, 1108.  Accordingly, "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Morgan, 536 U.S. at 113.[4]

Plaintiff commenced her action on March 15, 2006.  Here, the only alleged adverse actions taken by defendant which occurred within the two years prior to the March 15, 2006, filing of plaintiff's complaint appear to be the early 2005 inaccurate evaluation/assessment  and her September 2005 termination.  All other claims based on allegedly adverse employment actions taken by defendants prior to this time are time-barred.

Plaintiff also alleges that her rights were violated when defendants "caus[ed]" the Department of Police Standards and Training to revoke her license which prevents her from obtaining employment as a police officer.  Defendants contend that this issue is not ripe for adjudication since the DPSST has not revoked plaintiff's license to work as a police officer.  They also contend that reporting plaintiff's termination was required by law and any action by the DPSST is not their action.  The evidence indicates that plaintiff's license has not been revoked.  Moreover, in the event that plaintiff's license is revoked, this decision will be made by DPSST and neither Josephine County nor any individual defendant has any control over that decision.  Defendants motion for summary

---

[4]  Morgan was a Title VII case.  However, the Ninth Circuit has applied the Morgan discrete acts analysis to § 1983 claims.  RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1050 (9th Cir. 2002); Cherosky v. Henderson, 330 F.3d 1243, 1246 n.3 (9th Cir. 2003).

judgment on this issue is granted.

As to plaintiff's First Amendment claim, defendants concede that a genuine issue of material fact exists as to whether the 2005 inaccurate evaluation/assessment was retaliatory. However, defendants contest that plaintiff's speech in 2002 was a substantial or motivating factor for plaintiff's termination in 2005 because the 2002 events are too remote in time.

Generally, causation may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (closeness in time strengthens inference). The Ninth Circuit has stated that, "'in order to support an inference of retaliatory motive, the termination must have occurred "fairly soon after the employee's protected expression.'"" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (quoting Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1009-10 (7th Cir. 2000)). However, there is no bright-line rule regarding the timing of retaliation. As the Ninth Circuit has stated:

> Retaliation often follows quickly upon the act that offended the retaliator, but this is not always so. For a variety of reasons, some retaliators prefer to take their time. They may wait until the victim is especially vulnerable or until an especially hurtful action becomes possible. Or they may wait until they think the lapse of time disguises their true motivation. . . . There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation. Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances. . . . ; but the length of time, considered without regard to its

> factual setting, is not enough by itself to justify a grant of summary
> judgment.

Coszalter, 320 F.3d at 978.  Here, consideration of the timing alone–a period of

approximately two-and-one-half  years–could support a finding that the timely adverse

actions in 2005 were too remote from plaintiff's speaking out about sexual harassment in

late 2001 and 2002.  See Villiarimo, 281 F.3d at 1065 (eighteen month lapse by itself was

too long to give rise to inference of causation) (and cases cited); Clark County Sch. Dist.

v. Breeden, 532 U.S. 268, 273 (2001) (twenty month lapse by itself suggests no

causality); Tucker v. Reno, 205 F. Supp.2d 1169, 1175 (D. Or. 2002) (three years).  Here,

however, plaintiff offers other evidence which could support a finding that the 2005

employment actions at issue were retaliation for plaintiff's complaints of sexual

harassment against Matiaco and her complaints about the investigation, in 2001 and early

2002.  She offers evidence that in May 2002, she complained of threats by Matiaco; in

September 2002, plaintiff told her supervisor that complaints from Ms. Williams about

her in June were voiced because she had made charges against Matiaco; in June 2003,

plaintiff filed a claim against Matiaco about statements he had made about her which she

claims showed he was trying to harm her; in early 2004, the local press published articles

about events at the jail which included statements by defendant Daniel about her.  She

also offers evidence that in May 2004, she agreed to testify in a case brought by former

deputy Dykes who had been terminated, (Scruggs Decl. ¶ 24).  A jury could conclude

from this evidence that defendants viewed plaintiff as a troublemaker and simply waited

for the opportune moment to seek retaliation.  In this factual setting, the Court cannot

conclude as a matter of law that the 2002 events are too remote in time. A question of fact exists as to defendants' motivations for the 2005 employment actions, and the jury should be allowed to consider all the evidence in determining whether these employment actions by defendants were retaliation for speaking out in violation of plaintiff's First Amendment rights. See Coszalter, 320 F.3d at 978; Bahri v. Home Depot USA, Inc., 242 F. Supp.2d 922, 958-59 (D. Or. 2002). Defendants' motion for summary judgment on this issue is denied.

Defendants contend that defendants Daniel and Michael are entitled to qualified immunity. Qualified immunity shields government agents from suit for damages if a reasonable official could have believed that his or her conduct was lawful, in light of clearly established law and the information possessed by the official. Anderson v. Creighton, 483 U.S. 635, 637-39, 641 (1987); Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). This standard shields all government officials except those who are either plainly incompetent or who knowingly violate the law. Malley v. Briggs, 475 U.S. 335, 341 (1986). Under the sequential analysis set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), the court first must ask whether the facts alleged by plaintiff, taken in the light most favorable to plaintiff, establish a constitutional violation, Id. at 201; Robinson v. Solano County, 278 F.3d 1007, 1013 (9th Cir. 2002) (en banc). If no constitutional right would have been violated under the facts alleged, then the analysis ends. Saucier, 533 U.S. at 201. If a violation could be established under the facts alleged, the court will then consider whether the right was clearly established. Id.;

Robinson, 278 F.3d at 1013.  Plaintiff bears the burden of showing that, at the time of the

alleged constitutional violation, the constitutional right at issue was clearly established.

Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).  The inquiry whether the right was

clearly established "must be undertaken in light of the specific context of the case, not as

a broad general proposition."  Saucier, 533 U.S. at 201.  The court must determine

whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted.   If the law does not put an officer on notice that his conduct was

clearly unlawful, summary judgment based on qualified immunity is appropriate.  Id. at

202.

Here, defendants do not dispute that a constitutional violation has been stated, but

contend that no case law exists from which either defendant Daniel or defendant Michael

could have concluded that certain alleged specific conduct was clearly unconstitutional.

The Court finds that the conduct which defendants argue is not clearly established

law is unnecessarily too specific.  The Ninth Circuit has determined that,

> A right is "clearly established" when the contours of the right are
> "sufficiently clear that a reasonable official would understand that what he
> is doing violates that right."  To determine whether qualified immunity
> applies, we must consider the application of the right in the specific
> context in question.  This does not mean "than an official action is
> protected by qualified immunity unless the very action in question has
> previously been held unlawful," however, but rather that "in light of pre-
> existing law the unlawfulness must be apparent."  Indeed, "'[o]fficials can
> still be on notice that their conduct violates established law even in novel
> factual circumstances.'"  In order to find that the law was clearly
> established, then, "we need not find a prior case with identical, or even
> 'materially similar,' facts."  Instead, we must "determine whether the
> preexisting law provided the defendants with 'fair warning' that their
> conduct was unlawful."

Ceballos v. Garcetti, 361 F.3d 1168, 1180 (9th Cir. 2004) (citations omitted), rev'd on another ground, 547 U.S. 410 (2006); Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3410 (U.S. Jan. 17, 2008) (No. 07-95) (while the right allegedly violated must be defined at the appropriate level of specificity, plaintiff need not establish that defendant's "'behavior had been previously declared unconstitutional.'").

In the context of speech in the workplace, the Ninth Circuit has held that the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established following the decisions in Pickering v. Board of Education, 391 U.S. 563 (1968), Allen v. Scribner, 812 F.2d 426, amended by 828 F.2d 1445 (9th Cir. 1987), Anderson v. Central Point Sch. Dist. No. 6, 746 F.2d 505 (9th Cir. 1984), and Thomas v. Carpenter, 881 F.2d 828 (9th Cir. 1989). Coszalter, 320 F.3d at 979; see Rivero v. San Francisco, 316 F.3d 857, 863 (9th Cir. 2002) (Pickering "established that a public employee has a First Amendment right to speak publicly on matters of public concern").

The Ninth Circuit has also determined, in the First Amendment retaliation context where defendant seeks qualified immunity, that plaintiffs must show that two things were clearly established at the time of the alleged violation to show that qualified immunity does not apply: "1) that their speech involved a matter of public concern, and 2) that the interests served by allowing them to express themselves outweighed the state's interest in promoting workplace efficiency and avoiding workplace disruption." Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 747 (9th Cir. 2001); Hufford v.

<u>McEnaney</u>, 249 F.3d 1142, 1148 (9th Cir. 2001). The second test is the balancing test established in <u>Pickering</u>, <u>supra</u>. As discussed above, defendants do not contest either of these elements, which plaintiff asserts in support of her argument that she states a First Amendment retaliation claim.

In view of these authorities, the applicable law was clearly established, and plaintiff establishes that qualified immunity does not apply here. Defendants' motion on the ground that defendants Daniel and Michael are entitled to qualified immunity is denied.

The Court has found that a genuine issue of material fact exists as to whether plaintiff's speech was a substantial or motivating factor in either the early 2005 inaccurate evaluation/assessment or plaintiff's termination. Plaintiff's motion for summary judgment as to her first claim is denied.

<u>Second claim - ORS 659A.203 Whistleblowing</u>

Plaintiff claims that defendants violated Oregon's whistleblowing statute, ORS 659A.203.

In pertinent part,[5] ORS 659A.203 provides that:

> (1) . . . [I]t is an unlawful employment practice for any public employer to:
> . . . .
> (b) Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:

---

[5] In her motion, plaintiff appears to limit her claim to the protected activity of good faith disclosure of reasonably believed evidence of violation of law, rule, or regulation.

   (A) A violation of any federal or state law, rule or regulation by the
state, agency or political subdivision;
   . . . .

"Disciplinary action" is defined by the whistleblowing Act as including but not limited to:

"dismissal, demotion, transfer, reassignment, supervisory reprimand, warning of possible

dismissal of withholding of work, whether or not the action affects or will affect

employee compensation."  ORS 659A.200.

  The Oregon district court has applied the standards for a Title VII retaliation claim

to claims under the Oregon Whistleblower Act.  <u>Clarke v. Multnomah County</u>, No. CV-

06-229-HU, 2007 WL 915175, at *14 (D. Or. Mar. 23, 2007); <u>Minter v. Multnomah</u>

<u>County</u>, No. CIV-01-352-ST, at *6 (D. Or. May 10, 2002) (and cases cited).  Therefore,

plaintiff must show that:  "(1) she engaged in protected activity; (2) she suffered an

adverse employment decision; and (3) she suffered the adverse employment decision

because she engaged in the protected activity, that is, there is a causal link between her

activity and the employment decision."  <u>Clarke</u>, 2007 WL 915175, at *14.

  Defendants do not dispute that plaintiff engaged in protected activity.

  As to the element that plaintiff suffered adverse employment action, defendants

contend that some of plaintiff's claims are barred by the statute of limitations and others

do not state a claim under the statute.

  A complaint based on an alleged unlawful employment practice under ORS 659A

must be filed in court or with the Bureau of Labor and Industries (BOLI) within one year

of the occurrence of the unlawful employment practice.[6]  ORS 659A.820, 659A.875.  On

the record and as discussed above, with the exception of claims based on the early 2005

inaccurate evaluation/assessment[7] and plaintiff's termination, plaintiff's claims based on

alleged reprimands and pay reduction are time barred.  Defendants' motion on this issue is

granted.

As to plaintiff's allegation that defendants failed to adequately investigate and/or

sanctioned harassment directed toward her and other female personnel, the Court agrees

with defendants' contention that these alleged actions do not constitute "disciplinary

action" under the whistleblowing statute and, therefore, no claim can be based on these

alleged actions or inactions.  Defendants' motion on this issue is granted.

As to plaintiff's allegation that defendants "caus[ed]" the DPSST to revoke her

license which prevents her from obtaining employment as a police officer, defendants

contend that they cannot be held liable for actions of the DPSST; reporting plaintiff's

termination was required by law, OAR 259-008-0020(2), and does not satisfy the element

of an unlawful employment practice; and they are immune for disclosing information at

the request of DPSST, ORS 181.675(2)(3).  OAR 259-008-0020 provides that the

department head "shall" report information of a discharge of  public safety personnel

within ten days.  Such reporting is required by law and any consequences of that reporting

---

[6]  The date that plaintiff filed a BOLI complaint is not in evidence.  Plaintiff alleges that she filed a complaint with BOLI on September 28, 2005.  (Am. Compl. ¶ 43.)  Defendants appear to agree with this date.  (Defs. Mem. At 30.)

[7]  Defendants concede in their motion when discussing plaintiff's first claim for violation of her First Amendment rights that a genuine issue of material fact exists as to whether the 2005 inaccurate evaluation/assessment was retaliatory.

taken by the DPSST cannot constitute a disciplinary action amounting to an unlawful employment practice under the Act.  Moreover, a public safety agency that discloses information to the DPSST requested by it, is immune from civil liability "from the disclosure or its consequences," unless lack of good faith is shown by a preponderance of the evidence.  ORS 181.675 (3).  Plaintiff does not argue and makes no showing that any disclosure of information to the DPSST was not in good faith.  Defendants' motion on this issue is granted.

Defendants contend that no evidence supports plaintiff's allegations that defendants discouraged and restrained disclosure under the Act.  As discussed, supra, it appears that plaintiff is not going forward on these claims alleged in her amended complaint.  Defendants' motion on this issue is granted.

As to the element of a causal link, defendants contend that plaintiff's claim based on her 2005 termination is based on events too remote in time.  In Portland Association of Teachers v. Multnomah School District No. 1, 171 Or. App. 616, 625 (2000), the Oregon court determined that, "[t]he causal connection is typically based on proximity in time between the protected activity and the employer's action, coupled with attending circumstances that suggest something other than legitimate reasons for the temporal tie." Citing to Portland Association and/or Ninth Circuit law, the Oregon district court has applied the proximity in time analysis discussed above to claims arising under ORS 659A.  See Bahri, 242 F. Supp.2d at 953; Delcey v. A-Dec, Inc., No. Civ. 05-1728-PK, 2008 WL 123855 (D. Or. Jan. 9, 2008); Montelongo v. Chase Manhattan Mortg. Corp., No. Civ. 04-1376-AS, 2005 WL 2346088, at *11 (D. Or. 2005); Jamal v. Wilshire Mgmt.

Order - Page 24

Leasing Corp., 320 F. Supp.2d 1060, 1079-80 (D. Or. June 10, 2004).  For the reasons

discussed, supra, the Court finds that, because there is evidence of other incidents

occurring in the intervening time between 2002 and the employment actions taken by

defendants in 2005, the events in 2002 are not too remote in time and my be used by

plaintiff in support of her claim.  Defendants' motion on this issue is denied.

Genuine issues of material fact exist as to whether a causal link exists between

plaintiff's protected activity and defendants' 2005 employment decisions.  Therefore,

plaintiff's motion for summary judgment as to her second claim is denied.


Third claim 42 U.S.C. § 2000e / Title VII Retaliation and Fourth claim ORS 659A.030

Retaliation

In these claims, plaintiff alleges that defendants retaliated against her for

protesting and/or opposing sex discrimination / harassment.

To establish a prima facie case of Title VII and ORS 659A.030 retaliation,[8]

plaintiff must establish:  (1) she engaged in a protected activity; (2) defendant subjected

her to an adverse employment action; and (3) "a causal link exists between the protected

activity and the adverse action."  Manatt v. Bank of Am., NA, 339 F.3d 792, 800 (9th Cir.

2003) (quoting Ray v. Henderson, 217 F.3d 234, 1240 (9th Cir. 2000)); Gahano v. Sundial

Marine & Paper, No. 05-CV-1946-BR, 2007 WL 4462423, at *7, *10 (D. Or. Dec. 14,

2007).  As to the causation element, the parties agree that Oregon courts use a

---

[8] Establishing a prima facie case of discrimination for ORS Chapter 659 actions is identical
to that under federal law.  Henderson v. Jantzen, Inc., 79 Or. App. 654, 657 (1986).

"substantial factor" test.  To be a substantial factor, "the employer's wrongful purpose

must have been 'a factor that made a difference'" in the decision to take the adverse

action.  Bahri, 242 F. Supp.2d at 953 (and cases cited).

Defendants contend that, as with plaintiff's First Amendment claim and her

Whistleblowers claim, plaintiff's federal and state retaliation claims are time-barred with

the exception of the early 2005 inaccurate evaluation/assessment and her termination.

Similarly, they contend that these two actions are too remote in time from the 2002 events

so as to be considered retaliatory.

In Oregon, plaintiff has 300 days after an alleged unlawful employment practice

has occurred to file a Title VII charge with BOLI.  42 U.S.C. § 2000e-5(e); Morgan, 536

U.S. at 109-10; Gamez-Morales v. Pac. Northwest Renal Servs., LLC, No. CV 05-546-

AS, 2006 WL 2850476, at *15 (D. Or. Sept. 29, 2006).  A complaint based on alleged

unlawful employment practice under state law must be brought within one year, supra.

ORS 659A.820, 659A.875.  As discussed above, under Morgan, the continuing violation

doctrine does not apply to discrete acts of retaliation, and the alleged retaliatory actions

will be time barred if not brought within  the limitations period.  See Montelongo, 2005

WL 2346088, at *16.   Defendants' motion on this issue is granted.

It seems clear from the record that the only alleged retaliatory acts which are

actionable are the 2005 inaccurate evaluation/assessment and plaintiff's termination.  All

other adverse employment actions alleged by plaintiff are time-barred.  As discussed

supra, the Court has found that plaintiff may use the 2002 and later events to support her

claims, including her retaliation claims.

For the same reasons discussed by the Court previously, genuine issues of material fact exist as to whether a causal link exists between the protected activity and either of the two adverse actions at issue in plaintiff's Title VII and ORS 659A.030 retaliation claims. Plaintiff's motion as to her third and fourth claims are denied, and defendants' motion as to plaintiff's fourth claim on the ground that plaintiff cannot demonstrate that retaliatory intent was a substantial factor in plaintiff's termination is denied.

Fifth Claim 42 U.S.C. § 1983 Fourteenth Amendment

Plaintiff alleges that she has a substantive due process right to pursue her chosen occupation in law enforcement.

The Supreme Court has recognized that the liberty component of the Fourteenth Amendment's Due Process Clause includes "some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999) (and cases cited). The cases which recognize this substantive due process right involve a complete prohibition of the right to engage in a calling and not a brief interruption. Id. at 292. The Ninth Circuit has determined that a substantive due process claim is established where plaintiff shows that, (1) she is unable to pursue an occupation, and (2) such inability is caused by government actions that were arbitrary and capricious. Engquist v. Or. Dept. Of Agric., 478 F.3d 985, 997 (9th Cir. 2007) (and cases cited), cert. granted, 76 U.S.L.W. 3199, 76 U.S.L.W. 3364, 76 U.S.L.W. 3371 (U.S. Jan. 11, 2008).

(No. 07-474).  The Engquist court held that there is substantive due process protection

"against government employer actions that foreclose access to a particular profession to

the same degree as government regulation."  Id. at 998; Sagana v. Tenorio, 384 F.3d 731,

743 (9th Cir. 2004) (judicial review of laws infringing on nonfundamental rights, such as

the right to pursue work, is "a very narrow one."), cert. denied, 543 U.S. 1149 (2005).

This right is limited to "extreme cases," such as "'a government blacklist, which when

circulated or otherwise publicized to prospective employers effectively excludes the

blacklisted individual from his occupation, much as if the government had yanked the

license of an individual in an occupation that requires licensure.'" Engquist, 478 F.3d at

997-98 (quoting Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997)).  The Engquist

court adopted the standard set forth by the Seventh Circuit in Bordelon v. Chicago School

Reform Board of Trustees, 233 F.3d 524, 531 (7th Cir. 2000),  as to how much

interference with job prospects constitutes a denial of the right to pursue a profession.  To

bring an occupational liberty claim under this standard, "a plaintiff must show that the

'character and circumstances of a public employer's stigmatizing conduct or statements

are such as to have destroyed an employee's freedom to take advantage of other

employment opportunities.'"  Thus, "'It is not enough that the employer's stigmatizing

conduct has some adverse effect on the employee's job prospects; instead, the employee

must show that the stigmatizing actions make it virtually impossible for the employee to

find new employment in his chosen field.'"  Engquist, 478 F.3d at 998.

From the allegations of plaintiff's amended complaint and her arguments in

support of her motion from summary judgment, the basis of plaintiff's due process claim

is the alleged inadequacies connected to defendants' investigation leading up to her

termination.  However, even if the inadequacies in the investigation, as alleged by

plaintiff, are true,  "the stigma of being fired, alone, even for false reasons, does not

create a liberty interest." Fritz v. Norblad, 566 F. Supp.1459, 1464 (D. Or. 1983).

Conducting an allegedly inadequate and selective investigation which led to the

termination of plaintiff's employment does not rise to the level the Ninth Circuit has

found supports a substantive due process right to pursue a chosen occupation.  See

Engquist, 478 F.3d at 998-99.

        Plaintiff also alleges as a basis for her due process claim that defendants caused

the DPSST to revoke her license which prevents her from obtaining employment in her

chosen profession as a police officer.  Plaintiff declares in her September 25, 2007,

declaration that she was told by  a DPSST employee that, due to her termination "and at

the request of Josephine County," her certification as a corrections deputy and patrol

deputy would be revoked.  (Sept. 25, 2007, Scruggs Decl. at 2 ¶ 6.)  However, there is no

evidence before the Court that the DPSST has revoked plaintiff's certification or license.

However, even if the DPSST has revoked or does revoke plaintiff's license, the decision

to revoke plaintiff's license is not a County decision, and neither Josephine County nor

any of the individual defendants has the legal ability to control what the DPSST does with

regard to plaintiff's license.  See OAR 259-008-0070(1)(2); OAR 259-008-0020(2); ORS

181.675(2).

        Beyond the allegations of her complaint, plaintiff offers her September 25, 2007,

affidavit in support of summary judgment which, while far from clear, suggests that

defendants may have communicated to prospective law enforcement employers that plaintiff was terminated for leaking confidential information to outlaw bikers and associating with them.  Even assuming that such statements were made and admissible evidence to this effect were offered,[9] the Court finds that this evidence, as a matter of law, does not rise to the requisite level and does not support a finding that defendants' statements were so stigmatizing as to amount to a "government blacklist" which excludes plaintiff from her chosen occupation.  See Hogan v. Calvin-Smith, No. CV 07-555-PK, 2008 WL 183077, at *5-*6 & n.4 (D. Or. Jan. 16, 2008) (allegedly false and misleading statements to third parties about Oregon Department of Corrections volunteer's personal relationships with inmates) (citing Engquist, 478 F.3d at 997-98 and Bordelon, 233 F.3d at 531); see also Coukoulis v. Mercer, No. CIV. 97-1301-JO, 1999 WL 551143, at *4-*5 (D. Or. June 29, 1999).

For the reasons stated, plaintiff's motion for summary judgment as to her fifth claim of violation of her substantive due process rights is denied, and defendants' motion as to this claim is granted.

Defendants also contend that they are entitled to summary judgment as to any implied claim for violation of procedural due process included in her fifth claim.  It does not appear from plaintiff's complaint allegations and her briefing on the cross-motions for summary judgment that she states a claim for violation of procedural due process.  To the extent that she does, defendants' motion on this ground is granted.

---

[9] Defendants move to strike paragraph 7 of plaintiff's September 25, 2007, affidavit as hearsay.

Order - Page 30

Plaintiff's fifth claim for violation of Fourteenth Amendment rights is dismissed.

Sixth claim 42 U.S.C. § 2000e / Title VII

Plaintiff alleges that, "Defendants discriminated against Julee Scruggs in the terms, conditions and privileges of her employment and created, maintained and condoned a hostile work environment all because of her sex. The comments and actions of defendants constituting the hostile work environment were severe and pervasive." (Am. Compl. at 17 ¶ 75.) It appears from her complaint allegations that plaintiff pleads both a disparate treatment claim based upon her gender and a hostile work environment claim based upon her gender and defendants address plaintiff's claim as including both claims.

Disparate treatment occurs when a plaintiff is singled out and treated less favorably than others similarly situated based on race or national origin, or gender. See Gay v. Waiters' & Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir. 1982). To the extent that plaintiff states a disparate treatment claim based upon discrete acts, defendants contend that, under Morgan, 536 U.S. at 110-11, and the applicable limitations period, see supra, plaintiff's discrete act discrimination claims are time-barred with the exception of the 2005 inaccurate evaluation/assessment, and the house arrest and termination. The Court agrees. Defendants' motion on this issue is granted. As to these claims, defendants concede in their motion that genuine issues of fact exists as to whether the contents of the 2005 inaccurate evaluation/assessment and plaintiff's termination were motivated by her gender. In her reply, plaintiff acknowledges defendants' concession that the gender

claims must go to trial as far as the 2005 events and states that, "The gender claim, then, is not directly before the court." (Pl. Resp. at 1.)    With these concessions, plaintiff's motion for summary judgment as to her sixth claim based upon a claim of disparate treatment-gender discrimination is denied.

To establish a prima facie case of hostile work environment based on her gender under Title VII, plaintiff must establish:  (1) she was "'subjected to verbal or physical conduct'" because of her gender; (2) "'the conduct was unwelcome'" and (3) "'the conduct was sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abuse work environment.'"  Manatt, 339 F.3d at 798 (quoting Kang v. U. Lim. Am., Inc.. 296 F.3d 810, 817 (9th Cir. 2002)).  The same analysis applies to a state claim brought under ORS 659A.030.[10]  Gahano, 2007 WL 4462423, at *7; see note 8.

Defendants contend that plaintiff cannot establish that a hostile work environment existed and that, even if such a work environment existed in 2002, the claim is time-barred because plaintiff provides no evidence that any acts that might constitute a hostile work environment occurred within the statutory period.

A hostile work environment claim consists of "a series of separate acts that collectively constitute one 'unlawful employment practice.'"  Morgan, 536 U.S. at 117. Therefore, because hostile environment claims are different in kind from discrete acts

_____

[10]  Plaintiff alleges violation of 42 U.S.C. § 2000e / Title VII only in her amended complaint.  In her motion, she also argues that the state discrimination statute was violated as well. For purposes of summary judgment, the Court will address a claim for hostile work environment brought under state law.

Order - Page 32

claims since they involve repeated conduct, hostile work environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period*." Morgan, 536 U.S. at 115-18, 120, 122 (emphasis added); Lyons, 307 F.3d at 1105-06.

As to conduct that might support a hostile work environment, plaintiff focuses on events that occurred in 2002-2003. Defendants appear to concede that a hostile work environment might have been created during this time. However, despite the challenge by defendants to plaintiff to point to evidence of incidences occurring within the statutory period, plaintiff has not identified any incidents. Accordingly, defendants' motion as to plaintiff's sixth claim based on a hostile work environment is granted and plaintiff's motion as to her sixth claim based on a hostile work environment is denied. Plaintiff's sixth claim based upon a claim of hostile work environment in violation of Title VII and state law is dismissed.

Damages under Title VII

Defendants contend that the non-economic damages and punitive damages requested by plaintiff in paragraphs 76 and 77 of her Title VII claim are not recoverable under 42 U.S.C. § 2000e-5(g). The cases upon which defendants rely predate the 1991 Civil Rights Act which added a damages provision. 42 U.S.C. § 1981a allows recovery of both compensatory and punitive damages against a defendant who has engaged in unlawful intentional discrimination. The damages remedies are in addition to the equitable remedies allowed by 42 U.S.C. § 2000e-5(g). See Landgraf v. USI Film Prods.,

Order - Page 33

511 U.S. 244, 252-54 (1994).  Defendants' motion on this issue is denied.

Conclusion

Defendant Josephine County Sheriff's Department is dismissed as a defendant.

Plaintiff's fifth claim for violation of the Fourteenth Amendment and her sixth claim of

hostile work environment in violation of Title VII and state law are dismissed.  Plaintiff's

first claim of retaliation in violation of the First Amendment, second claim for violation of

the state whistleblowing statute, third and fourth claims of retaliation in violation of Title

VII and ORS 659A.030, and sixth claim of disparate treatment based on gender in

violation of  Title VII and state law, remain for trial.

## IV.  ORDER

Based on the foregoing, it is ordered that plaintiff's motion for summary judgment

(#39) is denied, and defendants' motion for partial summary judgment (#45) is granted in

part and denied in part, as stated.

DATED this ___4___ day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE